UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-242-GNS-CHL

**SHIREEN DUPREE HUTCHERSON,**                                              **Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY,**                         **Defendant.**

## REPORT AND RECOMMENDATION

Before the Court is the Complaint (DN 1) of Plaintiff, Shireen Dupree Hutcherson ("Hutcherson"). In her Complaint, Hutcherson seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). *See* 42 U.S.C. § 405(g) (2017). Hutcherson filed a Motion for Summary Judgment. (DN 10.) The Commissioner filed a Fact and Law Summary in response. (DN 18.) Therefore, this matter is ripe for review.

This matter was referred to the undersigned for the preparation of a report and recommendation. (DN 9, at PageID # 881; General Order 2014-17.) For the reasons set forth below, the undersigned **RECOMMENDS** that Hutcherson's Motion for Summary Judgment be **DENIED**, and the final decision of the Commissioner be **AFFIRMED**.

**I.**     **FINDINGS OF FACT**

Hutcherson protectively filed an application for disability insurance benefits on November 12, 2014. (DN 7-5, at PageID # 212-13.) On March 14, 2017, Administrative Law Judge Gloria B. York (the "ALJ") conducted a hearing on Hutcherson's application. (DN 7-2, at PageID # 85-117.) In a decision dated June 28, 2017, the ALJ engaged in the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (DN 7-2, at PageID # 54-67.) In doing so, the ALJ made these findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019. (*Id.* at 60.)

2. The claimant has not engaged in substantial gainful activity since May 30, 2014, the alleged onset date. (*Id.*)

3. The claimant has the following severe impairments: fibromyalgia; knee pain status post several surgeries; neck and low back pain with degenerative disc disease; shoulder pain; a bipolar disorder; and a generalized anxiety disorder with a panic disorder. (*Id.*)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 61.)

5. [T]he claimant has a residual functional capacity for a limited range of sedentary work. She can lift and carry ten pounds occasionally; stand and walk two hours out of an eight-hour day; sit six hours out of an eight-hour day; frequently reach overhead; and is limited to routine, repetitive tasks which require only occasional interaction with supervisors and coworkers and no interaction with the general public in a job which is not fast paced. (*Id.* at 63.)

6. The claimant is unable to perform any past relevant work. (*Id.* at 66.)

7. The claimant was born on December 26, 1970 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (*Id.*)

8. The claimant has at least a high school education with an Associates degree in electronic engineering technology and is able to communicate in English. (*Id.*)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*Id.*)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*)

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2014, through the date of this decision. (*Id.* at 67.).

Hutcherson requested an appeal to the Appeals Council (DN 7-4, at PageID # 208-10), which denied her request for review on February 15, 2018 (DN 7-2, at PageID # 34-36). At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 422.210(a) (2018); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Hutcherson is presumed to have received that decision five days later, on February 20, 2018. 20 C.F.R. § 422.210(c). Accordingly, Hutcherson timely filed this action on April 13, 2018. *See* 42 U.S.C. § 405(g).

## II. CONCLUSIONS OF LAW

The Social Security Act authorizes payments of disability insurance benefits to persons with disabilities. *See* 42 U.S.C. §§ 401 – 434 (2017). An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2018).

### A. Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla;" it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013);

*see Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

    B.    **Five-Step Sequential Evaluation Process**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. § 404.1520 (2018). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[1] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual function capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

---

[1] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months. 20 C.F.R. § 404.1509 (2018).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. Hutcherson's Contentions

Hutcherson argued that the ALJ erred in not affording controlling weight to the opinions of her treating physicians Dr. Andrea Watson ("Dr. Watson") and Dr. Mark Smith ("Dr. Smith"). Hutcherson also argued that the ALJ erred in her assessment of the opinion of consultative examiner Dr. J. Lorilea Conyer ("Dr. Conyer"). The undersigned will address each argument below.

#### 1. Treating Physicians Dr. Watson and Dr. Smith

Under the Social Security regulations, there are three categories of medical sources: treating, examining, and non-examining. 20 C.F.R. § 404.1502 (2016). A physician will be considered a treating source if the claimant sees him "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition." *Id.*; *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). The Parties agree that both Dr. Watson and Dr. Smith were Hutcherson's treating physicians. (DN 10-1, at PageID # 894; DN 18, at PageID # 920-24.) A treating source's opinion generally must be given controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in [the] case record." *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)) (internal

5

quotation marks omitted). If the treating source is not given controlling weight, then the "opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Id*. (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Whatever weight the ALJ accords a treating source's opinion, he or she must set forth "good reasons" for doing so. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) ("The regulation requires the agency to 'give good reasons' for not giving weight to a treating physician in the context of a disability determination." (citing 20 C.F.R. § 404.1527(d)(2)). Specifically, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 61 Fed. Reg. 34,490, 34,492 (July 2, 1996) (rescinded for all claims filed on or after March 27, 2017 by Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (March 27, 2017)).[2] Hutcherson argued that if these principles are "properly followed in this case, [her] treating physicians' opinions should have been given controlling weight." (DN 10-1, at PageID # 895.)

Regarding Hutcherson's physical limitations, in a form questionnaire, Dr. Watson opined that Hutcherson could only walk for fifteen minutes without rest or severe pain. (DN 7-7, at Page ID # 876.) Dr. Smith estimated she could walk approximately one or less city blocks without rest or severe pain. (*Id.* at 871.) Both Dr. Watson and Dr. Smith indicated that Hutcherson could only continuously sit and stand for fifteen minutes at a time and that during an eight hour workday, Hutcherson could only sit and stand/walk less than two hours. (*Id.* at 871, 876.) Dr. Smith also

---

[2] Because Hutcherson's claim was filed before March 27, 2017, SSR 96-2p still applies to Plaintiff's claim.

opined that Hutcherson needed to get up and walk for at least five minutes every ninety minutes. (*Id.* at 871.) Dr. Smith further found that Hutcherson would need the ability to shift positions at will from sitting, standing, or walking; would need to take unscheduled breaks of fifteen to thirty minutes during an eight hour work day, and would need to elevate her legs at least twelve inches or more when sitting for prolonged periods. (*Id.* at 872.) Dr. Watson stated that Hutcherson had significant limitations in doing repetitive reaching, handling, or fingering, while Dr. Smith found her to be under no such limitation. (*Id.* at 872, 877.) Both Dr. Watson and Dr. Smith found that Hutcherson was constantly experiencing pain or other symptoms severe enough to interfere with attention and concentration. (*Id.* at 871, 876.) The ALJ declined to give either Dr. Watson's or Dr. Smith's opinion concerning physical limitations controlling weight, finding that Hutcherson had the RFC to stand and walk two hours out of an eight-hour work day, sit six hours out of an eight-hour work day, and frequently reach overhead. (DN 7-2, at PageID # 63.)

Regarding Hutcherson's mental limitations, Dr. Watson found that Hutcherson's depression and anxiety affected Hutcherson's physical conditions and that emotional factors contributed to the severity of Hutcherson's symptoms and functional limitations. (DN 7-7, at PageID # 875.) Dr. Watson also found that Hutcherson was severely limited in her ability to deal with work stress. (*Id.* at 876.) However, Dr. Smith stated that emotional factors did not contribute to Hutcherson's physical conditions and did not identify any psychological conditions that affected the same. (*Id.* at 870.) The ALJ declined to give Dr. Watson's opinion concerning Hutcherson's mental limitations controlling weight, finding that Hutcherson was "limited to routine, repetitive tasks which require only occasional interaction with supervisors and coworkers and no interaction with the general public in a job which is not fast paced." (DN 7-2, at PageID # 63.)

In analyzing the opinions of Hutcherson's treating physicians, the ALJ stated that Dr. Watson's opinion that Hutcherson could not "work for an eight-hour day [wa]s not supported by objective findings" and was "inconsistent with the other evidence." (*Id.* at 65.) The ALJ noted that Dr. Watson's opinion was inconsistent with the records from John K. Biederman, MA, who saw Hutcherson in 2014 and 2015, and noted in October 2014 that he thought Hutcherson could return to work. (*Id.*; DN 7-7, at PageID # 552.) The ALJ also noted that Samantha Richards, APRN, who treated Hutcherson in as recently as February 2017—one month before the hearing before the ALJ—"report[ed] no apparent serious mental status abnormalities", "cooperative and attentive behavior," and "a euthymic mood." (DN 7-2, at PageID # 65; DN 7-7, at PageID # 806, 808, 812, 814.) The ALJ's stated analysis and citations to other evidence in the record make clear that the ALJ chose not to give Dr. Watson's opinion controlling weight because of its lack of consistency with the record as a whole. Consistency is one of the factors an ALJ is directed to weigh when considering whether to give controlling weight to a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c)(4) (2016) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Regarding the physical limitations imposed by both Dr. Smith and Dr. Watson, the ALJ noted that such restrictions were inconsistent with a January 2017 progress report by a physician's assistant that found that Hutcherson could "lift ten pounds occasionally and balance/drive and bend at the waist two-and-a-half to five-and-a-half hours each." (DN 7-2, at PageID # 65 (citing DN 7-7, at PageID # 772).) The ALJ found that this assessment was consistent with the "other evidence" and stated that the ALJ was "satisfied Ms. Hutcherson can perform a range of sedentary work with appropriate restrictions." (*Id.*) The ALJ further noted in support that the state agency physicians placed her on light work, but the ALJ was placing her on sedentary work. (*Id.*) Elsewhere in her

opinion, the ALJ noted that though the medical records reflected several knee surgeries, the same records did not "rule out sedentary work." (*Id.* at 64.) The ALJ noted that injections Hutcherson routinely received provided "good symptom relief" and that pain management notes "routinely show[ed] a claimant who is in no acute distress . . . ." (*Id.* at 64-65.) Likewise, these comments demonstrate that the ALJ viewed the physical limitations imposed by Dr. Smith and Dr. Watson as inconsistent with the record as whole, again, one of the regulatory factors the ALJ is instructed to consider when deciding whether to give controlling weight to a treating source's opinion. 20 C.F.R. § 404.1527(c)(4).

Hutcherson argued that "it [wa]s clear" that the ALJ did not follow the regulatory requirements regarding evaluating a treating source's opinion. (DN 10-1, at PageID # 898.) However, having reviewed the record, the undersigned finds that the ALJ provided good reasons for not giving controlling weight to the opinions of Dr. Watson and Dr. Smith: that the same were inconsistent with the record. Therefore, the undersigned finds that ALJ's decision is supported by substantial evidence. *See Price v. Comm'r of Soc. Sec.*, 342 Fed. App'x 172, 175-76 (6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court will generally uphold an ALJ's decision to discount that opinion.").

Hutcherson argued that the ALJ did not explicitly discuss the length of the treatment relationship, frequency of examinations, extent of the treating relationship, or the specialization of the treating source in her decision as part of her reasoning with respect to Dr. Smith and Dr. Watson's opinions. (DN 10-1, at PageID # 897.) However, an ALJ is not required to explicitly recite the regulatory factors if his or her explanation reflects them. *Infantado v. Astrue*, 263 Fed. App'x. 469, 474 (6th Cir. 2008); *see also Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x 802,

804-05 (6th Cir. 2011) (noting that the regulations only require an ALJ include "good reasons" for the weight given a treating source's opinion, not "an exhaustive factor-by-factor analysis"). Here, the ALJ's opinion contained sufficient information to make clear that her reasons for not affording controlling weight to Dr. Watson's and Dr. Smith's opinion were their inconsistency with the record as a whole. Accordingly, the ALJ's opinion included a sufficient basis for meaningful review and is not deficient for failure to cite each and every regulatory factor set forth in 20 C.F.R. § 404.1527.

Hutcherson also cites to *Macias v. Colvin*, No. 3:13-cv-622-JDM, 2014 WL 4794638, at *1 (W.D. Ky. Sept. 25, 2014), in support of her contention that the ALJ impermissibly failed to give controlling weight to Dr. Watson's and Dr. Smith's opinion. In *Macias*, the court found that the ALJ failed to evaluate the opinion Macias's treating physician and remanded for further proceedings. *Id.* at *6. The court explained that the ALJ's citation to "Macias's own report of his occasional activities and medication schedule" and failure to cite to any "other treatment notes or diagnostic tests" was insufficient compliance with the requirement to give "good reasons" for discounting the treating physician's opinion. *Id.* at *3. By contrast, here, the ALJ cited to specific evidence in support of her conclusion that Dr. Watson's and Dr. Smith's opinions were inconsistent with the record including other medical source opinions and treatment records. Therefore, the undersigned finds *Macias* distinguishable from the instant case.

For these reasons, the undersigned finds that Hutcherson has not demonstrated any error in the ALJ's assessment of Dr. Smith and Dr. Watson's opinions.

### 2. Dr. Conyer

Hutcherson also argued that the ALJ erred in her assessment of the opinion of consultative examiner Dr. Conyer. (DN 10-1, at PageID # 898.) In making a determination of a claimant's

RFC, the ALJ is required to consider the record as a whole, including the claimant's testimony and opinions from the claimant's medical sources. *See* 20 C.F.R. § 404.1545(a) (2018). The source of a medical opinion dictates the process by which the ALJ gives it weight. *Gayheart*, 710 F.3d at 376. Generally, the ALJ is required to give more weight to a source who has examined the claimant than one who has not and more weight to a source who regularly treats that claimant than one who does not. *Id.* at 375. An examining source "has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with her.'" *Smith*, 482 F.3d at 875 (quoting 20 C.F.R. § 402.1502). Dr. Conyer was an examining source, not a treating source, because Dr. Conyer assessed Hutcherson in person on one occasion. (DN 7-7, at PageID # 506.)

In affording weight to an examining source, the ALJ is required to "consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). However, a medical opinion from an examining source is "never assessed for 'controlling weight.'" *Gayheart*, 710 F.3d at 376. Further, unlike when an ALJ gives less than controlling weight to the opinion of a treating physician, an ALJ is not required to give "good reasons" for the weight ascribed to an examining physician's opinion. *See Ealy*, 594 F.3d at 514 ("[A]n ALJ is procedurally required to 'give *good reasons* in [his] notice of determination or decision for the weight [he gave the claimant's] treating source's opinion.' However, this requirement only applies to treating sources." (emphasis added)). Instead, the ALJ must only "say enough 'to allow the appellate court to trace the path of his reasoning.'" *Stacey v. Comm'r of Soc. Sec.*, 451 Fed. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

Dr. Conyer found that Hutcherson's capacity to understand, remember, and carry out instructions were affected to a moderate degree by her bipolar and panic disorder. (DN 7-7, at PageID # 510.) She opined that Hutcherson's ability to tolerate stress and pressure in day-to-day employment was impaired to a marked degree, which she defined as a "serious limitation" that severely limited, though not precluded, the ability to function. (*Id.*) Dr. Conyer also indicated that Hutcherson was moderately impaired in her capacity to respond appropriately to supervisors and coworkers in a work setting (*Id.*) The ALJ stated that she "[wa]s not persuaded Ms. Hutcherson [wa]s as limited as Ms. [*sic*] Conyer posit[ed]." (DN 7-2, at PageID # 63.) The ALJ noted that Dr. Conyer's opinion was not even consistent with Hutcherson's own reports during the examination, which the ALJ characterized as being largely reports of problems with pain. (*Id.*) The ALJ further stated that pain management and "other medical notes" generally reflected a normal psychiatric presentation. (*Id.*) In support, the ALJ cited to pain management records from two different physicians that noted that Hutcherson was "negative for new psychiatric or behavioral issues," appeared adequately groomed, and gave normal eye contact (DN 7-7, at PageID # 696, 764-65, 820-21, 829-30, 834-35), as well as observed that Hutcherson demonstrated intact judgment and insight, normal mood, and appropriate affect. (*Id.* at 514, 517, 520, 522, 525, 528, 532, 535, 538, 541, 587, 595). The ALJ also cited in support that the state agency physicians found Dr. Conyer's opinion inconsistent with the record. (DN 7-2, at PageID # 63 (citing DN 7-3, at PageID # 131, 156).) Based on the undersigned's review of the record, the undersigned finds that the ALJ supported her decision to disregard Dr. Conyer's opinion with adequate reasons. Accordingly, the undersigned finds the ALJ's decision supported by substantial evidence and finds no error in her assessment of Dr. Conyer's opinion.

## III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Hutcherson's Motion for Summary Judgment (DN 10) be **DENIED**, and the final decision of the Commissioner be **AFFIRMED**.

cc: Counsel of record

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).