UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 3:18-CV-00242-GNS-CHL

SHIREEN DUPREE HUTCHERSON                                           PLAINTIFF

v.

COMMISSIONER OF SOCIAL SECURITY                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Objection (DN 21) to the Magistrate Judge's Findings of Fact, Conclusions of Law and Recommendation ("R&R") (DN 20), and Plaintiff's Motion for Summary Judgment (DN 10). For the reasons outlined below, the objection is **OVERRULED** and the motion is **DENIED**.

### I. STATEMENT OF FACTS

Plaintiff Shireen Dupree Hutcherson ("Hutcherson") filed an application for Title II Social Security disability insurance benefits on November 15, 2014. (Administrative R. at 176, DN 7-5 [hereinafter R.]). On March 14, 2017, Administrative Law Judge Gloria B. York ("ALJ") conducted a hearing on Hutcherson's application. (R. at 53, DN 7-2). Upon consideration of Hutcherson's claim, the ALJ denied it using the five-step sequential process established by the Social Security Administration ("SSA"). 20 C.F.R. § 404.1520(a)(4); (R. at 21-40, DN 7-2).

At the first step, the ALJ found that Hutcherson has not engaged in substantial gainful activity since May 30, 2014, the alleged onset date, and that Hutcherson meets the insured status requirements. 20 C.F.R. § 404.1520(a)(4)(i); (R. at 27, DN 7-2). At the second step, the ALJ determined that Hutcherson has severe impairments, including: fibromyalgia; knee pain status post several surgeries; neck and low back pain with degenerative disc disease; shoulder pain; a

1

bipolar disorder; and a generalized anxiety disorder with a panic disorder. 20 C.F.R. § 404.1520(a)(4)(ii); (R. at 27, DN 7-2). At the third step, the ALJ found that Hutcherson does not have any impairment or combination of impairments that meets one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii); (R. at 28, DN 7-2). At the fourth step, the ALJ found that Hutcherson: has the residual functional capacity to perform sedentary work; can lift and carry ten pounds occasionally; can stand and walk two hours out of an eight-hour day; can sit six hours out of an eight-hour day; can frequently reach overhead; and is limited to routine, repetitive tasks which require only occasional interaction with supervisors and coworkers and no interaction with the general public in a job which is not fast paced. 20 C.F.R. § 404.1520(a)(4)(iv); (R. at 30, DN 7-2). For the fifth and final step, the ALJ determined that Hutcherson is capable of performing a significant number of jobs that exist in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); (R. at 33, DN 7-2). Thus, the ALJ determined that Hutcherson "has not been under a disability, as defined in the Social Security Act, from May 30, 2014, through the date of this decision" and did not award benefits. (R. at 34, DN 7-2).

Hutcherson appealed the ALJ's decision to the Appeals Council on July 20, 2017, which denied her request for review on February 15, 2018. (R. at 173-75, DN 7-4). Hutcherson then filed the present action on April 13, 2018. (Compl., DN 1). Upon Hutcherson's motion for summary judgment (Pl.'s Mot. Summ. J., DN 10) the Magistrate Judge issued his R&R, recommending that this Court affirm the ALJ's decision and deny Hutcherson's motion for summary judgment. (R&R at 13, DN 20). Hutcherson then objected to the R&R. (Pl.'s Obj., DN 21).

## II. JURISDICTION

The Court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment, affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g).

## III. STANDARD OF REVIEW

Social security cases may receive different levels of review in federal district courts. The Federal Magistrates Act allows district judges to designate magistrate judges to issue "proposed findings of fact and recommendations for . . . disposition . . . ." 28 U.S.C. § 636(b)(1)(B). The magistrate judge then files a recommendation, to which each party may object within fourteen days. 28 U.S.C. § 636(b)(1). Those parts of the report to which objections are raised are reviewed by the district judge de novo. *Id*. This differs from the standard applied to the Commissioner of Social Security's decision, which is reviewed to determine "whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted).

Evidence that a "reasonable mind might accept as adequate to support a conclusion" is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (citation omitted). It is "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (internal quotation marks omitted) (citation omitted). Where substantial evidence supports the ALJ's decision, a court is obliged to affirm. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (citation omitted). A court should not attempt to resolve conflicts of evidence or questions or credibility. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted). The district court may consider

any evidence in the record, regardless of whether cited in the ALJ's decision. *See Mullen v. Bowen*, 800 F.2d 535, 545-46 (6th Cir. 1986).

## IV. DISCUSSION

Throughout her objection and motion, Hutcherson appears to generally argue that the ALJ's opinion is not supported by substantial evidence. The only specific objections Hutcherson makes is that the ALJ failed to properly consider the opinions of three medical professionals in coming to her conclusion. (Pl.'s Obj. 9-15, DN 21; Pl.'s Mem. Supp. Mot. Summ. J. 9-13, DN 10-1). Specifically, Hutcherson argues that the ALJ failed to properly consider the opinions of her treating physicians, Dr. Andrea Watson ("Dr. Watson") and Dr. Mark Smith ("Dr. Smith"),[1] and the examining consultative psychologist, Dr. J. Lorilea Conyer ("Dr. Conyer").[2]

### A. The ALJ did not err in discounting the opinions of Drs. Watson and Smith.

The applicable social security regulations contain a procedural requirement that the Social Security Administration ("SSA") "always give good reasons in [its] notice of determination or decision for the weight [it] give[s] [a claimant's] treating source's medical opinion." 20 C.F.R. § 416.927(c)(2); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) ("The regulation requires the agency to 'give good reasons' for not giving weight to a treating physician in the context of a disability determination." (citation omitted)). As the Sixth Circuit has noted:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. This requirement also ensures that the ALJ applies the treating physician rule [in 20 C.F.R. § 416.927(c)(2)] and permits meaningful review of the ALJ's application of the rule.

---

[1] The fact that Drs. Watson and Smith constitute "treating physicians" is undisputed.
[2] The fact that Dr. Conyer constitutes an "examining source" is undisputed.

*Wilson*, 378 F.3d at 544 (internal quotation marks omitted) (internal citations omitted) (citation omitted).  A treating physician's opinion will be given controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).  When a treating physician's opinions are not given controlling weight, "the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence."  *Id.* (internal citation omitted) (citing 20 C.F.R. § 404.1527(c)(2)-(6)).

Hutcherson argues that the ALJ did not explicitly apply some of the factors listed in 20 C.F.R. § 404.1527(c)(2) in evaluating the opinions of Drs. Watson and Smith.  "Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include "good reasons . . . for the weight . . . give[n] [to the] treating source's opinion"— not an exhaustive factor-by-factor analysis."  *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (alterations in original) (citations omitted).  The Sixth Circuit in *Francis* affirmed the ALJ's decision after the ALJ's opinion "cited the opinion's inconsistency with the objective medical evidence, [the claimant's] conservative treatment and daily activities, and the assessment of [the claimant's] other physicians[,]" saying, "[p]rocedurally, the regulations require no more."  *Id*. at 805.  Here, the ALJ identified that Drs. Watson and Smith's opinions were inconsistent with the objective medical evidence and the assessment of other medical professionals.  (R. at 28-33, DN 7-2).  The ALJ additionally identified evidence supporting the assertion that certain treatments can assist Hutcherson in her daily life.  (R. at 31-32, DN 7-2).

5

Moreover, "[b]ecause the treating-source rule is not 'a procrustean bed, requiring an arbitrary conformity at all times,' we excuse a decision's noncompliance with its provisions 'where [the decision] has met the goal of § 1527[c](2)—the provision of the procedural safeguard of reasons—even though [it] has not complied with the terms of the regulation.'" *Francis*, 414 F. App'x at 805 (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). "So long as the decision 'permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion,' we look past such procedural errors." *Francis*, 414 F. App'x at 805 (quoting *Friend*, 375 F. App'x at 551).

The ALJ found that "the opinion of Dr. Watson . . . that the claimant cannot work an eight-hour day is not supported by objective findings and it is inconsistent with the other evidence." (R. at 32, DN 7-2). The ALJ found Dr. Watson's opinion that "depression and anxiety affect Ms. Hutcherson's physical condition" to be directly contradictory to the opinion of MA John K. Biedermann ("MA Biedermann") who "felt like that she needed to go back to work[.]" (R. at 32, DN 7-2; R. at 513, DN 7-7). The ALJ also noted that MA Biedermann's opinion was "congruent with mental status examinations and the claimant's unimpressive psychological presentation in numerous medical records." (R. at 32, DN 7-2). The ALJ specifically highlighted the opinion of APRN Samantha Richards "who followed Ms. Hutcherson more recently at Astra[3] [and] reports no apparent serious mental status abnormalities." (R. at 32, DN 7-2; R. at 767, DN 7-7). Hutcherson "otherwise recorded cooperative and attentive behavior with no gross behavioral abnormalities as recent as December 2016 and even more recent on February 14, 2017 observed a

---

[3] This is in reference to Astra Behavioral Health ("Astra"), a mental health treatment organization that Dr. Watson referred Hutcherson to in June 2014. (R. at 625, DN 7-7).

euthymic mood for a claimant who was friendly and communicative." (R. at 32, DN 7-2; R. at 771, DN 7-7; R. at 775, DN 7-7). Finally, Dr. Watson's opinion contradicted Dr. Smith's opinion, as Dr. Smith "opined emotional factors did not contribute to her symptoms." (R. at 32, DN 7-2; R. at 831, DN 7-7).

The ALJ also took issue with Drs. Watson and Smith's opinion "that the claimant can sit 15 minutes, stand 15 minutes[,] and sit, stand and/or walk less than two hours." (R. at 32, DN 7-2). Dr. Smith opined in March 2017 that Hutcherson "cannot lift any weight[,] not even ten pounds[,] . . . and must elevate her legs 75% of a workday if she does sedentary work." (R. at 32, DN 7-2; R. at 831-34, DN 7-7). The ALJ, however, found a progress report rendered in January 2017 from Dr. Smith's office as more persuasive and somewhat contradictory. (R. at 32, DN 7-2). The progress report "indicated [Hutcherson] can lift ten pounds occasionally and balance/drive and bend at the waist two-and-a-half to five-and-a-half hours each." (R. at 733, DN 7-7). The ALJ found this report to be "consistent with the other evidence[.]" (R. at 32, DN 7-2).

The ALJ noted that Hutcherson takes medication for fibromyalgia, fibromyalgia being Hutcherson's "biggest problem." (R. at 31, DN 7-2). Specifically, Hutcherson takes Tramadol, which "relieves her pain for five to six hours." Hutcherson also takes muscle relaxers. The ALJ provided a detailed explanation of the knee, neck, and back pain related by Hutcherson, in addition to migraines. More importantly, the ALJ explained why "[o]bjective medical evidence . . . does not rule out sedentary work[,]" evidence that implicitly contradicts Drs. Watson and Smith's findings "that the claimant can sit 15 minutes, stand 15 minutes[,] and sit, stand and/or walk less than two hours":

> Records show good symptom relief with Synvisc-one injections. . . . Follow-up examination in August 2016 indicated she may be due for one of these injections. She had continued full extension with no effusion on examination of the bilateral knees but also continued diffuse tenderness to palpation. It had been quite some

7

time since her last Synvisc-one injection. She returned in October 2016 for right should and neck pain with the above noted unimpressive EMG results making her hopeful for conservative treatment and a return to normal daily activities. Neck and back pain are with fairly minor findings on magnetic resonance imagings (MRI) of the back and neck as already described above. Pain management notes reflect her complaints in serial visits, which routinely show a claimant who is in no acute distress despite her pain score on the visual analogue scale (VAS). Treatment is with injection therapy and radiofrequency ablations as has been noted. Dr. Watson's notes at the Elizabethtown Family Practice reflect Ms. Hutcherson's complaints again with not particularly impressive objective findings including normal examination of the neck as already pointed out.

(R. at 31-32, DN 7-2) (internal record citations omitted).

Finally, the ALJ noted that while the state agency physicians placed Hutcherson on light work, the ALJ was placing Hutcherson on sedentary work. (R. at 32, DN 7-2). The state agency physicians also reported that Hutcherson could lift 20 pounds occasionally and 10 pounds frequently, which refutes Dr. Smith's contention that Hutcherson could never lift any weight. (R. at 97, DN 7-3; R. at 833, DN 7-7).

In sum, the ALJ parsed through the record and determined that she could not rely on the opinions of Drs. Watson and Smith because those opinions contradicted the opinions of other medical professionals and other evidence of record. The ALJ specifically refuted Dr. Watson's contention that Hutcherson cannot work an eight-hour day by pointing to at least three other reports from treating medical professionals contradicting that conclusion and by examining Hutcherson's reported medical issues firsthand. The ALJ also specifically rejected Drs. Watson and Smith's opinions regarding Hutcherson's constrained ability to sit, stand, and walk in the same way and her mental health issues. The ALJ "'g[a]ve good reasons' for not giving weight to a treating physician in the context of a disability determination[,]" and as such the Court can find no error in the ALJ's opinion. *Wilson*, 378 F.3d at 544 (citation omitted).

Hutcherson cites to *Macias v. Colvin*, No. 3:13-cv-622-JDM, 2014 WL 4794638 (W.D. Ky. Sept. 25, 2014), in support of her contention that the ALJ impermissibly failed to give controlling weight to Drs. Watson and Smith's opinions. As the Magistrate Judge noted, however, *Macias* is distinguishable because the ALJ's analysis in *Macias* "consisted only of a comparison of [the treating physician's opinion] to Mr. Macias's reported activities and medications, not to any other treatment notes or diagnostic tests." *Id.* at *3. Unlike *Macias*, the ALJ here did not discount Drs. Watson and Smith's opinions solely on a comparison of Hutcherson's "reported activities and medications." The ALJ's analysis here included an explanation of Hutcherson's medical history and current medical status suggesting that she could perform sedentary work. The ALJ also explained how Drs. Watson and Smith's opinions conflicted with the opinions of other medical professionals. The Magistrate Judge correctly found *Macias* distinguishable.

The Court agrees with and accepts the Magistrate Judge's finding that "Hutcherson has not demonstrated any error in the ALJ's assessment of Dr. Smith and Dr. Watson's opinion." (R&R at 10).

**B.   The ALJ did not err in discounting the opinion of Dr. Conyer.**

Generally, the ALJ is required to give more weight to a source who has examined the claimant than one who has not. *Gayheart*, 710 F.3d at 375 (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1)). In affording weight to an examining source, the ALJ is required to "consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citation omitted). However, a medical opinion from an examining source is "never assessed for 'controlling weight.'" *Gayheart*, 710 F.3d at 376. Further, an ALJ is not

9

required to give "good reasons" for the weight ascribed to an examining physician's opinion. *See Ealy*, 594 F.3d at 514. Instead, the ALJ must only "say enough 'to allow the appellate court to trace the path of [her] reasoning.'" *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

The ALJ specifically outlined in detail her reasons for discounting Dr. Conyer's opinion. (R. at 29-30, DN 7-2). First, the ALJ noted an extreme discrepancy in the global assessment ratings given by Dr. Conyer and medical professionals at Astra. (R. at 28-29, DN 7-2). According to the ALJ, a global assessment rating ("GAF") score "is a clinician's rating[] of an individual's overall psychological, social and occupational functioning on a scale of 0 to 100." (R. at 29 n.4, DN 7-2). "A rating of 55 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning." Astra examined Hutcherson four times between June 26, 2014 and July 8, 2015: (1) on June 26, 2014, Astra scored Hutcherson at a 41-50 GAF (R. at 626, DN 7-7); (2) on January 26, 2015, Astra scored Hutcherson at a 50 GAF (R. at 634, DN 7-7); (3) on March 31, 2015, Astra scored Hutcherson at a 55 GAF (R. at 637, DN 7-7); and (4) on July 8, 2015, Astra scored Hutcherson at a 55 GAF (R. at 639, DN 7-7). When Dr. Conyer evaluated Hutcherson on January 19, 2015, however, Dr. Conyer scored Hutcherson at 20 GAF. (R. at 471, DN 7-7). "A rating of 20 indicates there is some danger of hurting [one's] self or others or occasionally fails to maintain minimal personal hygiene or gross impairment in communication." (R. at 29 n.6, DN 7-2). This discrepancy persuaded the ALJ to rely on the treating physicians with Astra over Dr. Conyer's opinions as an examiner.

In addition to the great discrepancy between Astra's GAF scores versus Dr. Conyer's GAF score, the ALJ also noted that, according to Dr. Conyer herself, Hutcherson "maintained normal eye contact, responsive facial expressions and a cooperative attitude, which would appear

10

unsupportive of a 20 GAF." (R. at 29, DN 7-2; R. at 470, DN 7-7). The ALJ noted further discrepancies as between Dr. Conyer's observations of Hutcherson and the GAF score she assessed:

> Thoughts were logical; adaptive functioning adequate; and fund of knowledge average. Posture and gait were normal and motor activity not remarkable. She had no difficulty repeating a six-digit series of numbers forward and a four-digit series in reverse. Attention to task and concentration was normal and she was oriented to person, place and time. Ms. Conyer found slight to moderate impairment in psychological functioning except for marked limits tolerating stress, which is not consistent with the findings during the examination. Indeed, claimant generally described limitations in terms of pain problems while pain management and other medical notes largely reflect a normal psychiatric presentation overall.

(R. at 29-30, DN 7-2) (internal record citations omitted).

The ALJ additionally noted that "[t]he state agency psychological consultants similarly found Ms. Conyer's opinion inconsistent with the evidentiary file" and that "[t]he addition of new evidence since their 2015 opinions does not alter their respective conclusions." (R. at 30, DN 7-2). Finally, the ALJ noted that Dr. Conyer's opinion was not consistent with Hutcherson's own reports during examination, which the ALJ characterized as being largely reports of problems with pain.

For all of these reasons, the ALJ was "not persuaded Ms. Hutcherson is as limited as Ms. Conyer posits." Simply put, the ALJ more than adequately explained why she discounted Dr. Conyer's opinion. The ALJ specifically refuted Dr. Conyer's findings with the findings of Hutcherson's treating medical professionals. The ALJ also outlined specific medical reasons refuting Dr. Conyer's opinion. As such, the Court adopts the Magistrate Judge's finding that there is "no error in [the ALJ's] assessment of Dr. Conyer's opinion." (R&R at 12).

### C. The ALJ's opinion is supported by substantial evidence.

As a final matter, Hutcherson contends that the ALJ's opinion is generally not supported by substantial evidence by attempting to discredit the evidence that the ALJ did rely on.

First, Hutcherson takes issue with the ALJ's reliance on MA Biedermann's evaluation. Specifically, Hutcherson believes the ALJ mischaracterized MA Biedermann's report. Hutcherson believes that when MA Biedermann notes in his evaluation that he "felt like [Hutcherson] needed to go back to work" he is not saying that he thought Hutcherson had the ability to return to work. Yet, upon evaluation of the totality of MA Biedermann's report, it is Hutcherson who mischaracterizes the report. MA Biedermann explicitly told Hutcherson to return to work: "I asked her to go back into work on Friday[.]" (R. at 513, DN 7-7). If MA Biederman thought Hutcherson could not work, he would not have told her to return to work. Hutcherson also believes MA Biedermann's report and opinion to be outdated, having taken place on October 15, 2014. (R. at 513, DN 7-7). Hutcherson fails to articulate, however, any events or changes in condition between the time of MA Biedermann's report and the present day that may call Biedermann's report into question.

Hutcherson's criticism of the ALJ's reliance on APRN Richards's report can also be summarily dispensed with. The ALJ explicitly relied on APRN Richard's report only for the assertion that Hutcherson possesses "no apparent serious mental status abnormalities." (R. at 32, DN 7-2; R. at 767, DN 7-7). Hutcherson's criticism of the ALJ's reliance on APRN Richard's report goes beyond what the ALJ actually used APRN Richard's report for.

Finally, Hutcherson's criticism of the ALJ's reliance on a January 25, 2017, report can likewise be dispensed with summarily. Although that report notes that Hutcherson can lift 10 pounds occasionally and balance/drive and bend at the waist 2½ to 5½ hours each in a day,

Hutcherson focuses on the part of the report that recommends "no work[.]" While that latter fact obviously supports Hutcherson's position, the former fact supports the ALJ's determination that Hutcherson "has a residual function capacity for a limited range of sedentary work." (R. at 30, DN 7-2). Pointing to evidence of record supporting Hutcherson's position does not discount the evidence supporting the ALJ's determination. *See Gayheart*, 710 F.3d at 374 ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." (citing *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007))).

Hutcherson's belief that the ALJ's decision is not supported by substantial evidence is meritless. The ALJ cited to the opinions of medical professionals and to the plethora of reports outlining Hutcherson's medical conditions in support of her ruling. The ALJ's decision is supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 20) is **ACCEPTED AND ADOPTED IN ITS ENTIRETY**, Plaintiff's Objection (DN 21) is **OVERRULED**, and Plaintiff's Motion for Summary Judgment (DN 10) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

September 18, 2019

cc: counsel of record